■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LORRAINE BISNER, Appellant. [688 NYS2d 270] —Spain, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered October 23, 1995, upon a verdict convict-. ing defendant of the crimes of grand larceny in the third degree and petit larceny (four counts).

In September 1994, defendant was indicted on one count of grand larceny in the third degree and 95 counts of falsifying business records in the first degree. The charges were based on allegations that defendant, during the first 10½ months of 1992 and while office manager of an independent insurance agency (hereinafter the agency) located in the Town of Rotterdam, Schenectady County, repeatedly stole cash from the agency. The indictment also charged a codefendant, Janice Natalie, another full-time employee of the agency, with grand larceny and falsifying business records based upon her participation in the alleged scheme. In a separate indictment, defendant was also charged with five counts of petit larceny alleging that she misappropriated agency funds to pay premiums on insurance for herself and her family. The indictments were consolidated for a joint trial, following which the jury returned a verdict finding defendant guilty of grand larceny in the third degree and four counts of petit larceny and not guilty of all counts of falsifying business records.* On the grand larceny count, defendant was sentenced to an indeterminate prison term of 1⅓ to 4 years and ordered to pay restitution in the amount of $35,000; she received a conditional discharge on each of the petit larceny counts, subject to her compliance with the restitution order. Defendant appeals.

The extensive inculpatory evidence against defendant adduced by the People during the trial included the agency's business and bank records, and the testimony of the owner of the agency who prior to 1992 had reduced his work schedule due to poor health leaving defendant in charge of the day-to-day operations. The balance of the office staff, two part-time agency employees, also testified, as well as an investigator

---

* Natalie was convicted of grand larceny in the fourth degree and acquitted on the remaining counts in the indictment (falsifying business records) against her.

with the State Insurance Department's Fraud Bureau (hereinafter the investigator) with expertise in accounting and white collar crime. These witnesses provided consistent testimony explaining the agency's office procedures and practices including, *inter alia*, the scope of defendant's and her coworkers' duties and the nature of the records kept by the agency and the bank.

To summarize, the agency's customers, most of whom purchased high-risk automobile insurance, submitted deposits with their insurance applications or paid premiums for existing policies. A large percentage of customers paid in cash; the cash or check was recorded in an office ledger by the employee who handled the specific transaction and rung up on the cash register. At day's end the cash was totaled and recorded on a two-sheet self-carbonizing deposit slip, and the checks were listed individually thereon; the cash and checks were then deposited into the agency's escrow account. From this account the agency paid the various insurance companies the customers' premiums. The agency's commission checks from the insurance companies were generally deposited *into* its operating bank account, from which agency expenses were paid; these commissions and the $35 fee paid by most applicants for an assigned risk policy (which customers paid in addition to their premium) were the sole sources of the agency's revenue. With few exceptions, defendant totaled up the cash register at the end of the day and prepared the deposit slip; if defendant was absent, Natalie usually performed these tasks.

In mid-1992 the owner became concerned that the agency was not receiving the commissions he had anticipated; when he expressed concern to defendant, she told him that business was slow. During the latter part of 1992 the owner began to spend more time at the agency. On November 13, 1992, after eight years with the agency, defendant abruptly quit her job. Shortly thereafter the agency began to receive complaints from customers who were being billed directly by the insurance companies for premiums which they had already paid to the agency. The owner discovered that the escrow account did not have sufficient funds to pay premiums owed to the insurance companies; he had to deposit more than $30,000 of his own and borrowed funds to replenish the account.

Defendant's assertion that the evidence was insufficient to sustain the verdict against her is without merit. There is ample evidence to support the conclusion that defendant received cash premium payments from customers which she recorded in the daily ledger but failed to ring up in the cash register and

instead retained; that defendant diverted the agency's commission checks into its escrow account to cover her theft of cash; and that during the 10½-month period before defendant abruptly quit, more than $57,000 in cash received from customers was missing which could not be explained by any practice authorized by the owner or engaged in by the co-workers. In many instances defendant concealed her diversion of commission checks into the escrow account by not individually listing checks on the deposit slip or by falsely identifying the source of a check on the agency's copy of the deposit slip.

The well-settled standard for reviewing the sufficiency of the evidence in a criminal case, including one based upon circumstantial evidence, is "whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" (*People v Contes*, 60 NY2d 620, 621, quoting *Jackson v Virginia*, 443 US 307, 319 [emphasis in original]; *see, People v Ficarrota*, 91 NY2d 244, 248-249). Upon our review, we have no difficulty in concluding that the evidence provides a valid line of reasoning which, when considered with the permissible inferences, was more than sufficient to lead a rational trier of fact to conclude beyond a reasonable doubt that defendant is guilty of the crime of grand larceny in the third degree (*see, People v Parker*, 220 AD2d 815, *lv denied* 87 NY2d 1023).

We reject defendant's contention that the evidence was insufficient to permit the jury to conclude that she stole more than $3,000, the threshold for grand larceny in the third degree (*see,* Penal Law § 155.35). Defendant argues that the owner's sloppy business practices and his admission that he used the cash drawer as his "personal bank" preclude the inference that the amount taken by defendant, if any, exceeded $3,000. The investigator, however, testified that, even considering the various uses of cash authorized by the owner, including the owner's practice of removing cash, an unexplained cash shortfall of approximately $57,000 remained. This conclusion is supported by the record. The determination that defendant stole much more than the threshold amount was not based upon speculation, as defendant claims. While evidence of access by others is relevant (*see, People v Raffaele*, 182 AD2d 783), the verdict will be sustained where, as here, other circumstances firmly establish defendant's guilt (*see, People v Dudley*, 155 AD2d 370). The most compelling circumstances here included defendant's duties as office manager, the large volume of payments recorded by her in the accounts receivable ledger but incorrectly

rung up on the cash register, her diversion of more than $46,000 in commission checks to the escrow account, the inaccuracies in the deposit slips she prepared, her expensive lifestyle and her abrupt resignation shortly after the owner began to question the low volume of commission checks. All of these factors strongly point to her guilt of stealing more than $3,000.

As to the four counts of petit larceny, the People presented evidence that defendant issued a number of computer-generated checks from the agency's escrow account and used them to pay the premiums on insurance for defendant or her family. There were no corresponding payments to the agency by defendant or a family member. Defendant contends that the agency paid for the insurance in return for overtime work. The owner, however, specifically testified that he had never agreed to pay insurance premiums in lieu of salary, had no benefits packages for his employees which provided insurance and never authorized the agency's payment of insurance premiums on behalf of defendant. His testimony was supported by the part-time employees. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have readily found the elements of petit larceny beyond a reasonable doubt (see, Penal Law §§ 155.05, 155.25).

We further conclude that the verdict is not against the weight of the evidence. Reviewed in a neutral light, the evidence presented by the People provided for a valid line of reasoning upon which the jury could reasonably conclude that defendant was responsible for considerably more than $3,000 of the deficiency (see, People v Bleakley, 69 NY2d 490, 495). In fact, that conclusion is the only reasonable inference which can be drawn from the People's evidence. The jury obviously rejected defendant's evidence. We discern no basis in this record upon which to disturb the jury's assessment of the proffered defenses. Accordingly, the verdict should not be set aside.

We also reject defendant's contention that County Court erred in denying her posttrial motion to set aside the verdict on grounds of repugnancy between her conviction on the grand larceny charge and her acquittal on all of the falsifying business records counts. In reviewing a claim of repugnancy, the court must focus on the elements of each count as charged to the jury (see, People v Loughlin, 76 NY2d 804, 806), and the review is limited to determining "whether the jury, as instructed, must have reached an inherently self-contradictory verdict" (People v Tucker, 55 NY2d 1, 8). A factual analysis of the evidence is not permitted (see, People v Brown, 243 AD2d 749, 750). Reversal on grounds of repugnancy is required only

"where the defendant is convicted of an offense containing an essential element that the jury has found the defendant did not commit" (*People v Trappier*, 87 NY2d 55, 58). Here, a comparison of the elements of the crimes as charged by County Court establishes no repugnancy in the jury's verdict (*see, People v Schongar*, 175 AD2d 317, 319, *lv denied* 78 NY2d 1130).

Finally, we reject defendant's assertion that the sentence is harsh and excessive. The sentence on the grand larceny conviction was within the statutory range for a class D felony and, therefore, in the absence of an abuse of discretion or extraordinary circumstances warranting modification, there is no basis for this Court to disturb the sentence (*see, People v Parker*, 220 AD2d 815, 817, *supra*). Defendant's contentions that she was punished for going to trial instead of accepting the plea offer are belied by the sentencing minutes. The restitution order in the amount of $35,000 was based on the record evidence of the owner's out-of-pocket loss, with County Court noting that the evidence supported a finding that the loss actually exceeded $50,000. Accordingly, there is no basis to disturb any aspect of this sentence.

Cardona, P. J., Peters, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed.